IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ellen Woodward, | : | |
| Debtor. | : | Bankruptcy No. 17-16163-MDC |
| | | |
| Ellen Woodward, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00219-MDC |
| U.S. Bank National Assoc. as Trustee for RMAC Trust, Series 2016-CIT, | : | |
| Defendant. | : | |

# **MEMORANDUM**

BY: THE HONORABLE MAGDELINE D. COLEMAN, CHIEF U.S. BANKRUPTCY JUDGE

## I. **INTRODUCTION**

Before the Court are two separate matters for resolution in the bankruptcy case of Ellen Woodward (the "Debtor"). One is the motion of U.S. Bank, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT ("U.S. Bank," and together with the Debtor, the "Parties") for relief from the automatic stay to initiate or resume foreclosure proceedings against real property owned, in part, by the Debtor (the "Stay Relief Motion").[1] The other is the Debtor's *Complaint to Determine Extent and Validity of Lien Ostensibly Held by U.S. Bank, Trustee and to Determine Claims of Debtor Against U.S. Bank TTEE and Objecting to Proof of Claim of U.S. Bank TTEE, Claim #2-1* (the "Adversary Complaint"),[2] filed in the

---

[1] Bankr. Docket No. 36.

[2] Adv. Pro. Docket No. 1.

above-captioned adversary action (the "Adversary Action"). On September 25, 2018, the Court determined that the Stay Relief Motion would be combined for trial purposes with the Adversary Action.[3] On November 22, 2019, the Court held a consolidated trial (the "Trial") on the Stay Relief Motion and the Adversary Action. For the reasons stated herein, the Court will (a) deny the Stay Relief Motion, and (b) enter judgment in favor of U.S. Bank in the Adversary Action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Ownership of the Property and the Foreclosure Action

On June 29, 1993, real property located at 2015 E. Sergeant Street, Philadelphia, Pennsylvania (the "Property") was deeded to the Debtor and her mother, Betty Woodward, as tenants in common.[4] The deed conveying ownership to the Property identified the grantees as Betty Woodward and Irene Woodward.[5] On the same date, the Debtor and her mother executed a mortgage (the "Mortgage") in favor of Germantown Savings Bank to secure payment of a Note in the original principal amount of $36,100.00.[6] Neither the Mortgage nor the Note are executed by an "Irene Woodward".[7] The Note by its terms matures July 1, 2023, but pursuant to a loan modification agreement (the "Loan Modification Agreement") entered into on January 18, 2014 was modified to extend the maturity date to February 1, 2054.[8]

Betty Woodward died intestate on July 4, 2010.[9] She was survived by five children: the Debtor, James Buller, John Woodward, Michael Woodward, and Bryant Woodward

---

[3] Bankr. Docket No. 66.

[4] Stipulation of Facts and Admissible Documents and to Jurisdiction of Court to Enter Final Order in Adversary Action (the "Stipulation of Facts"), at ¶¶ 4, 5. Adv. Pr. Docket No. 19.

[5] Exhibit S-3.

[6] Stipulation of Facts, at ¶6.

[7] Stipulation of Facts, at ¶¶9, 10.

[8] Stipulation of Facts, at ¶¶7, 8; Exhibit S-9.

[9] Stipulation of Facts, at ¶13.

(collectively, "Betty's Children").[10] Upon the death of Betty Woodward, her one-half interest in the Property passed to each of Betty's Children in equal shares by operation of law.[11] Therefore each of Betty's Children inherited a one-tenth interest in the Property as tenants in common.[12]

Wells Fargo Bank, N.A. ("Wells Fargo") acquired the Mortgage through a series of mergers and assignments.[13] On December 30, 2014, Wells Fargo filed a Complaint in Mortgage Foreclosure (the "Foreclosure Action") in the Court of Common Pleas of Philadelphia County (the "State Court") against the following defendants: James Buller, believed Administrator and/or heir of the Estate of Betty Woodward; John Woodward, believed Administrator and/or heir of the Estate of Betty Woodward; Michael Woodward, believed Administrator and/or heir of the Estate of Betty Woodward; Brian Woodward, believed Administrator and/or heir of the Estate of Betty Woodward; Ellen Hyson, believed Administrator and/or heir of the Estate of Betty Woodward; Ellen Woodward, believed Administrator and/or heir of the Estate of Betty Woodward; Ellen Woodward; Irene Woodward; and Unknown Heirs and/or the Administrator of the Estate of Betty Woodward (collectively, the "Foreclosure Defendants").[14] In the Foreclosure Action, Wells Fargo sought an *in rem* judgment for the amount of $35,315.51, plus interest and costs, including attorneys' fees and foreclosure and sale costs.[15]

On February 25, 2016, the Debtor filed *Defendant Ellen Woodward's Answer and New Matter to Plaintiff's Complaint in Mortgage Foreclosure* in the Foreclosure Action (the

---

[10] Stipulation of Facts, at ¶14.

[11] Stipulation of Facts, at ¶15. *See also* 20 Pa. C.S. §§301(b); 2101(a); 2103(1); and 2104(1), (2).

[12] Stipulation of Facts, at ¶16.

[13] Exhibits S-4, S-6, S-7, S-8.

[14] Exhibit S-4.

[15] Exhibit S-4.

3

"Foreclosure Action Response").[16] On May 10, 2017, default judgment (the "Default Judgment") was entered in favor of Wells Fargo against each of the Foreclosure Defendants other than the Debtor, Ellen Woodward, in the amount of $35,315.15.[17] With respect to the Debtor, after the filing of her Foreclosure Action Response, she and Wells Fargo litigated, including discovery and prosecuting and defending a summary judgment motion.[18] A trial in the Foreclosure Action was scheduled for September 14, 2017, but on September 11, 2017 (the "Petition Date") the Debtor filed her chapter 13 bankruptcy petition, at which time the Debtor's present bankruptcy counsel filed a suggestion of bankruptcy in the Foreclosure Action and the action was stayed.[19]

### B. U.S. Bank's Proof of Claim and Stay Relief Motion

On October 2, 2017, Wells Fargo assigned the Mortgage to U.S. Bank.[20] On January 22, 2018, U.S. Bank filed a secured proof of claim (the "Proof of Claim") against the Debtor in the amount of $60,047.97.[21] The basis of the claim is stated as "money loaned," secured by a lien on the Property.[22] The Proof of Claim asserts that the amount in arrears as of the Petition Date was $32,186.23.[23] Attached to the Proof of Claim is an itemization of the amounts asserted to be owing: $30,111.85 in principal, $2,034.61 in interest, $6,860.40 for fees and costs, and

---

[16] Exhibit S-16.

[17] Exhibits S-2, S-12; Stipulation of Facts at ¶18. Default judgment was entered against, among others, the Foreclosure Defendants identified as Ellen Hyson and Irene Woodward. As discussed *infra*, Ellen Hyson and Irene Woodward are not individuals, but rather are, at most, aliases of Ellen Woodward.

[18] Exhibit S-2.

[19] Exhibit S-2.

[20] Exhibit S-1.

[21] *Id.*

[22] *Id.*

[23] *Id.*

4

$21,041.11 for escrow deficiency for funds advanced.[24] The Proof of Claim provides that notices and payments should be sent to Rushmore Loan Management Services ("Rushmore"). The Proof of Claim does not reference the Default Judgment or the Foreclosure Action.

On March 9, 2018, U.S. Bank filed the Stay Relief Motion. U.S. Bank averred that the Debtor was a defendant in the Foreclosure Action "as a result of chronic failure and/or refusal to make, tender, and/or deliver the monthly mortgage payments required pursuant to the terms of the Note and Mortgage."[25] U.S. Bank alleged that the Debtor had not made the mortgage payments due October 2017 through January 2018, and U.S. Bank was entitled to stay relief because it lacked adequate protection and because the Debtor had inconsequential or no equity in the Property.[26]

On March 26, 2018, the Debtor filed the *Answer of Debtor to Motion of U.S. Bank N.A. as Trustee for Relief from the Automatic Stay* (the "Stay Relief Opposition").[27] The Debtor made arguments both with respect to U.S. Bank's standing and with respect to whether cause existed to grant stay relief. On the standing issue, the Debtor asserted that U.S. Bank lacked standing to bring the Stay Relief Motion because it was not the holder of the Note, the Loan Modification Agreement, or the Mortgage upon which the Proof of Claim was based and is not the party entitled to enforce any of those agreements.[28] The Debtor also asserted that a complaint in mortgage foreclosure had been filed by an entity other than U.S. Bank, that default judgments had been entered against the Debtor's co-tenants in favor of an entity other than U.S. Bank, and

---

[24] *Id.*

[25] Stay Relief Motion at ¶4.

[26] *Id.* at ¶¶6, 7.

[27] Bankr. Docket No. 40.

[28] Stay Relief Opposition at ¶¶1, 3.

5

that there was no indication on the State Court docket that those judgments had been transferred to U.S. Bank.[29] With respect to whether cause existed to lift the automatic stay, the Debtor asserted that no monthly mortgage payments were due post-petition because "Debtor's proposed chapter 13 plan provides for the payment of 100% of the allowed secured claim … and does not provide for the maintenance of current payments and the curing of any alleged arrears."[30] The Debtor further asserted that the fair market value of the Property was "not less than approximately $110,000.00 [while the] default judgment entered in the foreclosure case against the co-debtors was less than $36,000.00."[31] Therefore, according to the Debtor, there was an equity cushion of three times the amount of any likely allowed secured claim to protect that claimant's interest.[32]

### C.    The Debtor's Adversary Complaint Against U.S. Bank

On September 24, 2018, the day before a hearing was to be held on the Stay Relief Motion, the Debtor filed the Adversary Complaint against U.S. Bank.[33] By the Adversary Complaint, the Debtor objects to the Proof of Claim pursuant to §502(b)(1) of the Bankruptcy Code, 11 U.S.C. §§101, *et seq.*, and seeks a determination (a) pursuant to §506(a) of the Bankruptcy Code, of the extent and validity of U.S. Bank's asserted lien on the Property and the extent to which U.S. Bank's claim is a secured claim and the extent to which it is an unsecured claim, and (b) pursuant to §506(d) of the Bankruptcy Code, that any lien held by U.S. Bank is

---

[29] *Id.* at ¶3.

[30] *Id.* at ¶6.

[31] *Id.* at ¶7.

[32] *Id.*

[33] Bankr. Docket No. 61; Adv. Pro. Docket No. 1. As noted above, the Court determined the following day that it was appropriate to consolidate the Stay Relief Motion and the Adversary Action for the Trial.

6

void to the extent is does not secure an allowed secured claim.[34] The Debtor also seeks affirmative damages, punitive damages, attorneys' fees and costs against U.S. Bank for alleged violations of Pennsylvania Act 6 of 1974, 41 P.S. §§101, *et seq.* ("Act 6"), the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. §§201-1, *et seq.* ("UFTPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* (the "FDCPA").[35]

In the Adversary Complaint the Debtor alleges, similar to the Stay Relief Opposition, that U.S. Bank was not in possession of the Note when filing its claim, not a party to it, and not entitled to enforce it.[36] She also alleges that the Mortgage was not properly assigned to U.S. Bank, and therefore U.S. Bank relied on an ineffective assignment in asserting a secured claim.[37] With respect to the amount of the Proof of Claim, the Debtor avers that the Mortgage was reduced to a default judgment in favor of Wells Fargo in the amount of $35,315.15 against the Foreclosure Defendants other than the Debtor, judicially estopping U.S. Bank from asserting any amount due on the Mortgage in excess of the judgment amount, and the judgment had not been marked to the use of U.S. Bank.[38] Related to her objections to U.S. Bank's standing to assert its claim and the amount asserted, the Debtor asserts that U.S. Bank has violated statutory law in doing so. The Debtor asserts that because U.S. Bank did not hold the Note, was not entitled to enforce it, is not properly the assignee of the Mortgage, and is not the use plaintiff of the Default Judgment, it is a debt collector under the FDCPA but fails to identify the principal on whose behalf it is attempting to collect, in violation of the FDCPA.[39] The Debtor also asserts that the

---

[34] Adversary Complaint, at ¶1.

[35] *Id.*

[36] Adversary Complaint, at ¶¶16, 17.

[37] *Id.* at ¶¶18 to 34.

[38] *Id.* at ¶¶35 to 37.

[39] *Id.* at ¶¶38, 41, 49.

amount asserted in the Proof of Claim exceeds the Default Judgment amount by approximately $25,000.00 and includes interest, costs, and other charges, is not allowable and violates Act 6, the UFTPA, and the Third Circuit's decision in *In re Stendardo*, 991 F.2d 1089 (3d Cir. 1993).[40] The Debtor alleges she is entitled to treble damages pursuant to the UFTPA in the amount of $75,000.00 for U.S. Bank's alleged overstatement of its claim.[41]

U.S. Bank answered the Adversary Complaint (the "Answer"),[42] generally denying the Debtor's allegations. U.S. Bank asserts that it is the holder of a valid perfected lien and is fully secured.[43] U.S. Bank also denies that it has violated Act 6, the UFTPA, or the FDCPA.[44] With respect to its standing to assert its claim, U.S. Bank responded that it was in possession of the original Note and was entitled to enforce it, and was the assignee of a duly recorded assignment of mortgage, and therefore had standing to enforce the Note and assert its allowed secured claim.[45] As to the preclusive effect of the Default Judgment on the amount of its claim, U.S. Bank responded that no judgment had been entered against the Debtor in the Foreclosure Action, and therefore the merger doctrine articulated in *Stendardo* is inapplicable.[46] U.S. Bank denies any violation of the FDCPA, Act 6, or any other applicable state or federal laws.[47] Finally, U.S. Bank denies that there is any basis for statutory or actual damages or grounds for reduction of its secured claim.[48]

---

[40] *Id.* at ¶¶39 to 47, 50.

[41] *Id.* at ¶48.

[42] Adv. Pro. Docket No. 8.

[43] Answer, at ¶1.

[44] *Id.*

[45] *Id.* at ¶¶16, 34.

[46] *Id.* at ¶¶35, 39.

[47] *Id.* at ¶¶39, 41, 42, 46 to 50.

[48] *Id.* at ¶51.

8

### D. The Consolidated Trial on the Stay Relief Motion and Adversary Action

At the Trial on the Stay Relief Motion and Adversary Action, U.S. Bank presented the testimony of Darla Martin, Legal Proceeding Specialist at Rushmore. Ms. Martin testified that Rushmore is the servicer for U.S. Bank, and in that capacity physically holds the original Note on U.S. Bank's behalf and had done so since the time the Proof of Claim was filed.[49] In general, Ms. Martin testified as to (i) the authenticity of the original Note in Rushmore's possession and the chain of possession of the Note since U.S. Bank was assigned the Mortgage by Wells Fargo, and (ii) the amount asserted to be owed in the Proof of Claim.[50] Upon the conclusion of Ms. Martin's testimony and based on that testimony, the Debtor's counsel advised the Court that the Debtor would withdraw her arguments in the Stay Relief Response and Adversary Complaint that U.S. Bank did not have standing to assert the Proof of Claim and had violated the FDCPA.[51]

The Debtor testified on her own behalf at the Trial. The Debtor's testimony generally centered on (i) her use of the names Ellen Woodward and Ellen Hyson and non-use of the name Irene Woodward, (ii) her default under the Mortgage, and (iii) her Foreclosure Action Response.[52]

Each side also offered certain documents into evidence, in addition to the documents to which the Parties had previously stipulated. At the close of the Trial, and in light of the Debtor's withdrawal of her arguments regarding U.S. Bank's standing and violation of the FDCPA, the Court ordered the Parties to submit post-Trial briefs on the following remaining issues: (i) whether a judgment was entered against the Debtor in the Foreclosure Action into which the

---

[49] Trial Audio Recording, at 11:25 to 11:27; 11:36.

[50] *Id.* at 11:22 to 11:46.

[51] *Id.* at 11:46.

[52] *Id.* at 11:54 to 12:24.

Mortgage merged; (ii) if the Mortgage merged into the Default Judgment, was U.S. Bank's failure to base the Proof of Claim on the Default Judgment amount a violation of Act 6 and/or the UFTPA; (iii) if the Default Judgment was entered against the Debtor, what amounts, if any, survived the judgment and could be asserted in the Proof of Claim; and (iv) is U.S. Bank adequately protected by the Debtor's proposed chapter 13 plan in light of the Debtor failing to maintain post-petition mortgage payments.[53] The Court therefore took the Stay Relief Motion and Adversary Action under advisement.

On January 22, 2020, U.S. Bank filed the *Post-Trial Brief of Defendant, U.S. Bank National Association as Trustee for RMAC Trust, Series 2016-CIT* (the "U.S. Bank Brief").[54] On February 4, 2020, the Debtor filed *Plaintiff['s] Proposed Findings of Fact* and *Plaintiff's Proposed Conclusions of Law* (the "Debtor's Brief").[55]

### III.    DISCUSSION

#### A.    The Default Judgment Was Not Effectively Entered Against the Debtor and Does Not Operate to Cap U.S. Bank's Claim or Subject it to Statutory Liability

The threshold issue the Court must address is whether the Default Judgment was effectively entered against the Debtor, despite the Debtor having filed the Foreclosure Action Response *prior* to entry of the Default Judgment and despite the fact that the Default Judgment was not entered against "Ellen Woodward," but rather was entered against, among others, Ellen Hyson and Irene Woodward. If the Default Judgment was not effectively entered against the Debtor, her remaining claims in the Adversary Action are rendered meritless because U.S. Bank would be entitled to assert a secured claim under the Note, Loan Modification Agreement, and

---

[53] *Id.* at 12:39.

[54] Adv. Pro. Docket No. 21.

[55] Adv. Pro. Docket No. 24.

10

Mortgage, rather than as limited by the Default Judgment. The Debtor has not contested the amount U.S. Bank has claimed in the Proof of Claim other than because it is inconsistent with the Default Judgment.

The Court starts with the simple but important observation that in the Foreclosure Action, the Debtor not only filed her Foreclosure Action Response over one year prior to entry of the Default Judgment,[56] but in it represented (i) that she used the name Ellen Hyson during her prior marriage, but had reverted to the use of her maiden name, and (ii) that there was no natural person by the name of Irene Woodward having an interest in the Property or the Mortgage, but rather a clerical error had been made in the Office of the Recorder of Deeds for Philadelphia County when the Deed conveying the Property to the Debtor and her mother was recorded.[57] In light of these representations, the Court concludes that the Debtor conceded, well before the Default Judgment was entered, that she and Ellen Hyson are one and the same, and neither she nor anyone else related to the Property is or was Irene Woodward.

The question then becomes where this leaves the Debtor vis-à-vis the Default Judgment that was subsequently entered against Ellen Hyson and Irene Woodward. Pennsylvania law governs the preclusive effect of the Default Judgment. *In re Blatstein*, 1997 U.S. Dis. LEXIS 13376, at *31 (E.D. Pa. Aug. 26, 1997). With respect to Irene Woodward, the answer is simple. The Default Judgment was void *ab initio* because judgment cannot be entered against a person who does not exist. *See generally* 46 Am Jur 2d Judgments §77.

With respect to Ellen Hyson, the answer is also relatively simple. Because Ellen Hyson and Ellen Woodward are one and the same, and because Ellen Woodward responded to the

---

[56] Exhibit S-2.

[57] Exhibit S-16.

Foreclosure Complaint before entry of the Default Judgment, the judgment was void *ab initio* as to Ellen Hyson as well. Pennsylvania courts have repeatedly held that where a defendant has filed a responsive pleading, a subsequent default entered against the defendant is void. *See Allison v. Meris*, 493 A.2d 738 (Pa. Super. 1985) (affirming the lower court's order striking default judgment entered by prothonotary in favor of plaintiff, finding it was patently defective because it was entered after the defendants had filed an answer); *Peck v. New Kensington*, 478 A.2d 129 (Pa. Super. 1984) (default judgment entered after answer was filed was a nullity and had to be stricken); *Coulter v. Ignelzi*, 2016 Pa. Dist. & Cnty. Dec. LEXIS 3538 (Pa. Ct. Comm. Pl. Feb. 19, 2016) (striking as fatally defective a default judgment entered after the defendants had filed a pleading responsive to the complaint); *Sec. of Veterans Affairs v. Presbery*, 2015 Pa. Dist. & Cnty. Dec. LEXIS 3508 (Pa. Ct. Comm. Pl. Oct. 1, 2015) (striking as fatally defective a default judgment entered after the defendant filed an answer); *Kramer v. Agarwal*, 1981 Pa. Dist. & Cnty. Dec. LEXIS 315 (Pa. Ct. Comm. Pl. Aug. 25, 1981) (striking as fatally defective a default judgment entered after the defendants filed an answer).

The Debtor, in the Debtor's Brief, does not simply disregard the effect of her first-filed Foreclosure Action Response on the Default Judgment; she does not acknowledge it was ever filed or litigated in the State Court. In essence, the Debtor takes the position that Wells Fargo obtained default judgment against Ellen Hyson and Irene Woodward, and because Ellen Hyson, Irene Woodward, and the Debtor are one and the same, U.S. Bank is stuck with a Default Judgment against her.[58] The Debtor makes this argument notwithstanding the fact that she responded in and actively litigated the Foreclosure Action, and that her Foreclosure Action Response acknowledged that she, Ellen Hyson, and Irene Woodward are in essence the same

---

[58] Proposed Conclusions of Law, at ¶19.

person. The Debtor may want to ignore the effect of her Foreclosure Action Response, but the Court cannot. The Debtor foreclosed the ability of Wells Fargo to obtain a default judgment against her, as the above-cited Pennsylvania court decisions reflect. Given her acknowledgement in her Foreclosure Action Response that she, Ellen Hyson, and Irene Woodward are the same person, when Wells Fargo obtained a default against Ellen Hyson and Irene Woodward, the Debtor could have, and arguably should have, moved to open or strike the default against them as fatally defective. Pa. R.C.P. 237.3. The fact that she failed to so does not rectify or waive the defective character of the Default Judgment against Ellen Hyson and Irene Woodward.

The Debtor asserts that this Court is bound by the Default Judgment and only the State Court can determine whether it is defective in some way.[59] The Debtor's argument is based on the faulty premise that U.S. Bank seeks to collaterally attack the Default Judgment or have this Court vacate it. Rather, U.S. Bank argues, and this Court agrees, that the Default Judgment entered against Ellen Hyson and Irene Woodward is ineffective with respect to the Debtor because she filed the Foreclosure Action Response as Ellen Woodward, Ellen Hyson, and Irene Woodward. The Court is not vacating a default judgment against the Debtor because the Default Judgment was never entered against Ellen Woodward, and to the extent it was entered against Ellen Hyson and Irene Woodward it is a nullity because the Foreclosure Action Response acknowledged that either they were the same person as Ellen Woodward, in the case of Ellen Hyson, or never existed, in the case of Irene Woodward. This is an important distinction the Debtor fails to address.[60]

---

[59] *Id.* at ¶¶ 15, 20.

[60] The Court observes, however, that it may be that the Court would have the power to vacate a default judgment where it was void *ab initio*. *See In re James*, 940 F.2d 46, 52-53 (3d Cir. 1991) (observing that federal courts deemed "inferior" under Article III have the power to vacate only state court judgments that are considered void *ab initio* because a void judgment is null and without effect, such that vacating it is "merely a formality and does not intrude upon the notion of mutual respect in federal-state interests.").

Because the Court concludes that the Default Judgment was void *ab initio* as to Irene Woodward and Ellen Hyson, and because no default judgment was sought or entered against Ellen Woodward, the Default Judgment was ineffective with respect to the Debtor. *See, e.g. Rieser v. Glukowsky*, 646 A.2d 1221, 1224 (Pa. Super. 1994) (the effect of a void judgment is that is must be treated as having never existed) (*citing First Seneca Bank v. Greenville Distrib. Co.*, 533 A.2d 157, 162 (Pa. Super. 1987)). Given this, U.S. Bank not only was permitted to assert a secured claim pursuant to its rights under the Note, Loan Modification Agreement, and Mortgage; it was compelled to do so, to the extent it asserted a claim against the Debtor. There was no enforceable judgment against the Debtor in the Foreclosure Action, and the only avenue U.S. Bank had to assert a claim was under its loan documents. There is therefore no merit to the Debtor's position that U.S. Bank is judicially estopped from asserting any amount in excess of the Default Judgment amount, that the Note and Mortgage merged into the Default Judgment, or that U.S. Bank has violated Act 6 and the UFTPA by asserting interest, costs, and other charges not included in the Default Judgment. The Debtor has not challenged the amounts in the Proof of Claim on any basis other than that they are inconsistent with the Default Judgment, and therefore they will be allowed without reduction.[61]

Having determined that there is no basis for the objection and claims in the Debtor's Adversary Complaint, the Court will issue judgment in favor of U.S. Bank with respect to the Adversary Action. The Debtor's sole basis for challenging U.S. Bank's proof of claim was that it does not have an interest in the Property or a valid claim against the Debtor in excess of

---

[61] In the Debtor's Brief, the Debtor included proposed findings of fact and conclusions of law that constitute a challenge to the prima facie validity of the Proof of Claim and the amount claimed. See Proposed Findings of Fact, at ¶¶48 to 54; Proposed Conclusions of Law, at ¶¶21 to 29. The Debtor, however, cannot use her opportunity to submit a post-Trial brief to assert new challenges to the Proof of Claim that she could have and should have pressed prior to or at the Trial.

$35,315.51. The Court finds that U.S Bank holds an interest in the Property pursuant to the Mortgage, and holds a claim in excess of $35,315.51, pursuant to the Note. Furthermore, the Debtor's assertion of affirmative claims under Act 6 and the UFTPA are based on her argument that the Note and Mortgage merged into the Default Judgment, which the Court rejects because the Default Judgment was not, and could not have been, entered against the Debtor. For the same reasons, the Court will overrule the Debtor's Stay Relief Opposition to the extent it asserts that the Default Judgment operates to cap U.S. Bank's claim.

      **B.    U.S. Bank's Interest in the Property is Adequately Protected by a Substantial Equity Cushion**

Remaining for determination is whether cause exists to grant stay relief to U.S. Bank because its interest in the Property is not adequately protected. The Court may grant relief from the stay under §362(d)(1) for cause, including the lack of adequate protection of an interest in property. 11 U.S.C. §362(d)(1). Cause is an intentionally broad and flexible concept which must be determined on a case-by-case basis, and there is generally no precise standard to determine when cause exists to successfully obtain relief from stay. *In re Brown*, 311 B.R. 409, 412-413 (E.D. Pa. 2004). As such, the test to be applied is a totality of the circumstances test based upon the particular facts of the case. *Buncher Co. v. Flaberg Solar US Corp. (In re Flaberg Solar US Corp.)*, 499 B.R. 475, 482-83 (Bankr. W.D. Pa. 2013) (*citing O'Neal Steel, Inc. v. Chatkin (In re Chatkin)*, 465 B.R. 54, 59 (Bankr. W.D. Pa. 2012)).

The Parties stipulated that the value of the Property at all relevant times and for all relevant purposes is $208,000.00.[62] Ms. Martin testified on behalf of Rushmore with respect to the amounts asserted in the Proof of Claim.[63] Ms. Martin testified that the secured claim amount

---

[62] Stipulation of Facts, at ¶30.

[63] Trial Audio Transcript, at 11:32.

of $60,047.97, and the arrearage amount of $32,186.23, accurately reflected the amount outstanding under the Note as of the Petition Date.[64] As the Court observed at the Trial, the Debtor did not provide any testimony or evidence contesting the amount of the Proof of Claim, other than that it was inconsistent with the Default Judgment.[65] Ms. Martin further testified that U.S. Bank had been paying taxes and insurance with respect to the Property since the Proof of Claim was filed, so that the deficiency had increased correspondingly.[66] U.S. Bank introduced into evidence the transaction history on the Note for the time period since Rushmore had been servicing the loan.[67] Ms. Martin testified that the Debtor had made only one payment in that time, on July 23, 2018, for the payment that had been due in May of 2014.[68] The Debtor subsequently stipulated to that fact at the Trial.[69]

The evidence presented at the Trial makes clear that the Debtor is not just in default of her payment obligations under the Note but is grossly non-performing. She has made one payment in at least the last six years. She has made no post-petition payments since filing for bankruptcy in September 2018. As a result, U.S. Bank has been compelled to pay the taxes and insurance on the Property, including post-petition.

There may be circumstances where egregious non-payment of a mortgage is sufficient by itself to grant stay relief for cause. *See In re Kessler*, 76 B.R. 434, 438 (Bankr. E.D. Pa. 1987) ("We believe that it is a fair statement that, if a debtor has failed to make payments to his mortgagee, and is unable to articulate any particular circumstances which render the mortgagee

---

[64] *Id.* at 11:33.
[65] *Id.* at 12:42.
[66] *Id.* at 11:34.
[67] Exhibit D-2.
[68] Trial Audio Transcript, at 11:29 to 11:30.
[69] *Id.* at 12:37.

adequately protected in spite of this fact, then relief from the automatic stay should follow. We might further state that the fact of non-payment alone, without *more* on the record, *will* generally result in our granting a motion for relief from the stay.") (emphasis in original). Furthermore, an eroding equity cushion may be sufficient to establish cause where the cushion is slim. *U.S. v. Olayer (In re Olayer)*, 577 B.R. 464 (Bankr. W.D. Pa. 2017).

In this case, however, there is a substantial equity cushion to afford U.S. Bank adequate protection of its interest in the Property. *See, e.g., In re Drebitko*, 1992 U.S. Dist. LEXIS 4231, at *6 (E.D. Pa. 1992) ("An equity cushion, if sufficient in size and unlikely to erode, can, standing alone, constitute adequate protection."); *Metro Bank v. Van Horn (In re Van Horn)*, 2011 Bankr. LEXIS 1849, at *10 (Bankr. M.D. Pa. May 19, 2011) (if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, the creditor is adequately protected) (*quoting In re Colonial Center, Inc.*, 156 B.R. 452, 460 (Bankr. E.D. Pa. 1993)). As noted, the Parties stipulated that the Property's value is $208,000.00. U.S. Bank argues that although the Debtor holds a 60% interest in the Property, equating to $124,800.00 of the stipulated value, the sizable equity cushion is being eroded daily by accumulating interest and the Debtor's failure to make post-petition payments under the Note or maintain taxes and insurance on the Property.[70] U.S. Bank is owed in excess of $60,000.00 when accruing post-petition arrearages are included.[71] However, the Court concludes that there is sufficient equity cushion, even with the Debtor's post-petition payment failures, to give U.S. Bank adequate protection at this time. The

---

[70] U.S. Bank's Brief, at §III.

[71] U.S. Bank did not offer evidence of the total post-petition arrearages and did not provide that figure in U.S. Bank's Brief. The itemization attached to U.S. Bank's Proof of Claim, however, reflects that the monthly mortgage payment was $392.04. Exhibit S-1. This figure does not include interest and fees that have accrued post-petition.

17

Debtor's interest in the Property far exceeds U.S. Bank's secured claim, and the Court was not presented with any evidence that the equity cushion is eroding at a rate that threatens U.S. Bank's interest. Absent that showing, U.S. Bank's interest is adequately protected and stay relief is not warranted at this time. *See, e.g., In re Grant*, 29 B.R. 375, 376 (Bankr. M.D. Pa. 1983) (denying stay relief and finding secured creditor was adequately protected where the debtor's equity exceeded the secured claim by approximately $27,000).

The Court will therefore deny the Stay Relief Motion without prejudice to U.S. Bank's to seek that relief if future circumstances warrant.

## **CONCLUSION**

For the reasons discussed above, this Court will (i) enter judgment in favor of U.S. Bank in the Adversary Action; (ii) deny the Stay Relief Motion; and (iii) overrule the Debtor's Stay Relief Opposition to the extent it asserts that the Default Judgment operates to cap U.S. Bank's secured claim.

An Order consistent with this Memorandum will be entered.

Dated: July 21, 2020

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Irwin L. Trauss, Esquire
Philadelphia Legal Services
718 Arch Street, Suite 300 N
Philadelphia, PA 19106

Sarah K. McCaffery, Esquire
Chandra M. Arkema, Esquire
Richard M. Squire & Associates, LLC
One Jenkintown Station
115 West Avenue, Suite 104
Jenkintown, PA 19046

William C. Miller, Esquire
Chapter 13 Trustee
P.O. Box 1229
Philadelphia, PA 19105

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106-2912